**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LUIS GARZA-OVALLE,                             *

Plaintiff,                                     *

v.                                             *            Civil Action No. ELH-19-895

DETENTION OFFICER ARMSTRONG,                   *
WARDEN RENEE ALEXANDER,
CHESAPEAKE DETENTION FACILITY,                 *
UNITED STATES MARSHALS SERVICE,
                                               *
Defendants.

***

## MEMORANDUM OPINION

The self-represented plaintiff, Luis Garza-Ovalle, a federal inmate currently incarcerated

at the Federal Correctional Institution in Pollock, Louisiana, filed suit against Detention Officer

Armstrong, Warden Renee Alexander, the Chesapeake Detention Facility in Baltimore, Maryland

("CDF"), and the United States Marshals Service ("U.S. Marshals" or "USMS"), defendants,

pursuant to the Federal Tort Claims Act and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388

(1971).[1]  ECF 1.  In a verified Complaint, plaintiff claims that defendants deliberately placed his

life in danger in July 2016, when they refused to buckle his seatbelt for transport in a correctional

van and denied him proper medical attention after the van was involved in a collision.  *Id.* at 3.  As

relief, he seeks a declaration that defendants violated his constitutional rights as well as

compensatory and punitive damages in the amount of $3 million per defendant.  *Id.* at 4.

According to Correctional Officer Marc Hardaway, of the Central Transportation Unit

("CTU"), as well as Alexander, and CDF (collectively, the "Correctional Defendants"), at the time

---

[1] The Clerk shall be directed to amend the docket to reflect the correct names of defendants
Chesapeake Detention Facility and the United States Marshals Service.

of the incident giving rise to plaintiff's Complaint, there was no custody officer working at CDF by the name of Armstrong. ECF 4-1 at 2-3. Rather, Hardaway was the CTU officer who drove a transport van from CDF on July 18, 2016. *Id.* Plaintiff, under the name "Juan Baca Quintana," was a passenger in the van.

Therefore, the Clerk shall be directed to add Marc Hardaway as a defendant. To the extent plaintiff intended to bring suit against "Officer Armstrong," his claims against that individual shall be dismissed, without prejudice.

The Correctional Defendants have moved to dismiss or for summary judgment, pursuant to Federal Rules of Civil Procedure 12(b) and 56. ECF 4. The motion is supported by a memorandum of law (ECF 4-1) (collectively, "the Correctional Defendants' Motion") and an exhibit. The U.S. Marshals filed a similarly-titled dispositive motion. ECF 10. That motion is also supported by a memorandum of law (ECF 10-1) (collectively, the "U.S. Marshals' Motion") and an exhibit.

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court informed plaintiff that the failure to file a response in opposition to the defendants' motions could result in dismissal of his Complaint or a judgment in favor of defendants. ECF 5, 11. Plaintiff responded on December 13, 2019. ECF 14. He also submitted a memorandum in opposition to the "government motions" (ECF 14-1) and several exhibits. No replies were filed.

The matter is now ripe for disposition. Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the suit shall be dismissed as to the U.S. Marshals. And, the Correctional Defendants' Motion, construed as a motion for summary judgment, shall be granted.

# I.    Factual Background

Plaintiff claims that on or about July 14, 2016, while in the custody of CDF, he was "being transferred" to Harrisburg, Pennsylvania by "Detention Officer Armstrong and an unknown female officer, both acting under the directions of Warden Renee Alexander." ECF 1 at 2.[2] Plaintiff states that he was handcuffed, shackled, and placed in a transport van with nine other prisoners. *Id.* Plaintiff claims that he asked Armstrong, who was also the driver, to buckle his seatbelt but Armstrong "refused smiling before stating, 'don't worry about it, its' [sic] just a hour and fifteen minutes up the road.'" *Id.* According to plaintiff, "after reaching high speeds" of 85 miles per hour on "Highway 83," the van was involved in "a serious accident . . . ." *Id.*[3] He recalls that "a car coming onto the freeway impacted [the transport van] on the front right side knocking the transport van into the concrete dividing wall." *Id.* Plaintiff claims that his head and knee slammed into the side of the van and "his body twisted so bad that his bladder let loose . . . ." *Id.*

According to plaintiff, officers and prisoners remained at the scene of the accident for approximately 45 minutes until "agents" of the U.S. Marshals arrived, along with local police, state troopers, ambulances, and a news reporter, at which time they were moved to a nearby rest area. *Id.* Plaintiff claims that he heard the U.S. Marshals tell the paramedics to "'just make sure they have no broken bones or any bones sticking out of them and tell them whatever is wrong with them they be [sic] taken care of when they get back to Baltimore.'" *Id.* Plaintiff told a paramedic that his neck, knee, and lower back were injured "but the paramedic just repeated what the U.S. Marshal told him to say, and refused to give him medical treatment or take him to the hospital for

---

[2] All citations reflect their electronic pagination.

[3] The record does not reflect a basis of knowledge for plaintiff's claim as to the speed of the van.

treatment." *Id.*

Plaintiff states that they were transported back to CDF, where the medical staff "dismissed his complaints as mediocre" and he was assigned to sleep on a top bunk. *Id.* Plaintiff also claims that for 15 days CDF staff refused to provide him with medical treatment, despite his repeated complaints. *Id.* [4]

On August 1, 2016, plaintiff was transferred to the United States Penitentiary Canaan in Pennsylvania, where he again complained of his injuries and worsening condition. *Id.* He was given Naproxen for pain relief. *Id.* at 3. But, the staff "did not tend to the nerve problems in which [he was] having bowl [sic] movements uncontrollably." *Id.* at 2-3.

On August 10, 2016, plaintiff was transferred to the Federal Correctional Institution in Ray Brook, New York ("FCI Ray Brook"). *Id.* at 3. He asserts that upon his arrival a correctional officer confiscated his Naproxen. *Id.* When plaintiff sought to explain about the accident and his injuries, the officer told him to "buy his medication off of commissary." *Id.* When plaintiff's "repeated attempts" to obtain medical care from the institution were unsuccessful, he began the administrative remedy process. *Id.*

Plaintiff submitted an Informal Resolution at FCI Ray Brook on October 18, 2016, seeking proper medical treatment for his spinal injuries. *See* ECF 14; ECF 14-2. The Warden subsequently denied plaintiff's request with the following explanation: "You have had several x-rays all of which are normal. You have been provided back exercises & advised to take Tylenol." ECF 14-2 at 4.

On December 1, 2016, plaintiff noted an appeal from the ruling on his Informal Resolution.

---

[4] Plaintiff does not provide any further details regarding this claim. He does not list the names of individuals whom he claims denied him medical care and assigned him to a top bunk.

ECF 14-3.  The Regional Director denied the appeal on February 17, 2017, stating that the Warden adequately addressed plaintiff's complaint.  *Id.* at 4.  On March 8, 2017, plaintiff filed an appeal to the General Counsel at the Federal Bureau of Prisons ("BOP").  *Id.* at 5-6.  The National Inmate Appeals Office denied plaintiff's claims on June 29, 2017.  *Id.* at 7.

On or about September 25, 2017, plaintiff filed an administrative claim with the Northeast Regional Office of the BOP.  *Id.* at 8.  The Acting Regional Counsel denied his claim on March 29, 2018, stating: "There is no evidence that a compensable loss was experienced as a result of the negligence on the part of any [BOP] employee."  *Id.* at 9.

## II.      Standard of Review

Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x 220, 222 (4th Cir. 2016) (per curiam).  But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does

not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed

discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).  "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Harrods,* 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant."  *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule

56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has not filed an affidavit under Rule 56(d). However, he explains that he has tried to obtain records about the accident from the "Pennsylvania State trooper office," without success. ECF 14 at 1-2. He has also written to CDF for records concerning the accident, also without success. *Id.* at 2. He asks the court to review the case with "a liberal state of mind," because he cannot afford a lawyer. *Id.*

I am satisfied that it is appropriate to address the Correctional Defendants' Motion as one for summary judgment, as this will facilitate resolution of the case. In this regard, the documents previously sought by plaintiff from third parties are not material to the issues. But, I shall construe the U.S. Marshals' Motion as one to dismiss, either under Rule 12(b)(1) or Rule 12(b)(6).

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187,

192 (4th Cir. 2009) (citation omitted) (alteration in original); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *accord Clear Channel Outdoor, Inc.*, 22 F. Supp. 3d at 524. In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Variety Stores, Inc. v. Wal-mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014

(4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III.    Discussion

Defendants seek dismissal under Rule 12 of the Federal Rules of Civil Procedure or summary judgment under Rule 56.

The Correctional Defendants, all of whom are employed by the State of Maryland, argue that (1) plaintiff fails to state a constitutional claim of deliberate indifference against Alexander or Hardaway; (2) pursuant to the Eleventh Amendment, CDF is immune from suit and the remaining Correctional Defendants cannot be sued in their official capacities; and (3) the Correctional Defendants enjoy statutory immunity for actions in tort. ECF 4-1. Moreover, Alexander asserts

that she was not the Warden of CDF in 2016, and she "had no supervisory authority over any employee at CDF at that time.  ECF 4-2 (Alexander Declaration).

The U.S. Marshal Service, a federal agency, argues that (1) plaintiff failed to exhaust his administrative remedies under the Federal Tort Claims Act ("FTCA"); and (2) plaintiff cannot bring a *Bivens* claim against a federal agency.  ECF 10-1; ECF 10-2 (Declaration of Gerald Auerbach, General Counsel for USMS).[5]

## A.  Correctional Defendants

### 1.  CDF

Section 1983 of Title 42 of the United States Code provides: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  (Emphasis supplied).  *See, e.g., Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1983 (2015).  Section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

---

[5] In a footnote, the USMS asserts that, in an action under the FTCA, the remedy against the United States is exclusive, the United States is the only proper defendant, and it should be substituted for the USMS as the defendant.  ECF 10-1 at 5 n.1 (citing, *inter alia*, 28 U.S.C. § 2679(a)).  To the extent that the government has moved for substitution, it is a curious way to do so.  I decline to consider the content of the footnote as a motion.

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

As a preliminary matter, CDF is not a "person" subject to suit under 42 U.S.C. § 1983. Several courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cty. Corr. Facility*, Civil Action No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke*

*City Jail*, 722 F.Supp. 1294, 1301 (E.D. N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit").

Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken by a person. CDF is not a person within the meaning of the statute. Therefore, plaintiff's claims against CDF cannot stand. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *see generally* 5 Charles Alan Wright, et al., Fed. Prac. & Proc. § 1230 (2002).

### 2. *Eleventh Amendment*

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign State."

States generally enjoy immunity from suit brought in federal court by their own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). In other words, under the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless the state consents or there is an exception to sovereign immunity. *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by

the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *Edelman v. Jordan*, 415 U.S. 651 (1974).

The Eleventh Amendment did not create sovereign immunity, however. Rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011). The preeminent purpose of state sovereign immunity is "to accord states the dignity that is consistent with their status as sovereign entities[.]" *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).

Claims against state employees sued in their official capacities are also subject to Eleventh Amendment immunity. This is because such a suit is tantamount to a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989); *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

In addition, state sovereign immunity bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state," including state agencies. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 100 (4th Cir. 2019); *McCray v. Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013).

Notably, "[t]he Eleventh Amendment bar to suit is not absolute." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). For example, state sovereign immunity does not bar federal enforcement actions. *Passaro v. Virginia*, 935 F.3d 243, 248 (4th Cir. 2019) (citing

*Seminole Tribe*, 517 U.S. at 71 n.14).

The Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state. In *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

Under the case of *Ex parte Young*, 209 U.S. 123, 128 (1908), "private citizens may sue state officials in their official capacities in federal court to obtain prospective relief from ongoing violations of federal law." *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018), *cert. granted*, No. 18-877 (June 3, 2019); *see Stewart*, 563 U.S. at 254-55; *Ex parte Young*, 209 U.S. at 159; *Wright v. North Carolina*, 787 F.3d 256, 261 (4th Cir. 2015); *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002). This exception to sovereign immunity "is designed to preserve the constitutional structure established by the Supremacy Clause." *Antrican*, 290 F.3d at 184; *see Stewart*, 563 U.S. at 254-55 (describing the *Ex parte Young* exception as "necessary to 'permit the federal courts to vindicate federal rights'") (citation omitted). It rests on the notion "that a State officer who acts in violation of the Constitution is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.'" *Antrican*, 290 F.3d at 184 (quoting *Ex parte Young*, 209 U.S. at 160); *see Stewart*, 563 U.S. at 255 ("[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.").

This doctrine creates only a "narrow" exception to the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146 (1993); *see Booth v. State of Md.*, 112 F.3d 139, 142 (4th Cir. 1997) ("*Ex Parte Young* represents a limited exception to Eleventh Amendment immunity[.]"). To determine whether the *Ex parte Young* exception to Eleventh Amendment immunity applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md*., 535 U.S. 635, 645 (2002) (citation omitted). A "prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies [this] 'straightforward inquiry.'" *Id.* So too does a prayer for a declaratory judgment, because although it may seek relief for past as well as future violations of federal law, "[i]t does not impose *upon* the State 'a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.'" *Id.* (emphasis in *Verizon*) (quoting *Edelman*, 415 U.S. at 668).

The State of Maryland has not waived immunity for claims brought pursuant to § 1983. Nor do the exceptions outlined above apply here. Accordingly, Alexander and Hardaway are immune from suit for actions taken in their official capacities.

As to actions taken by Alexander in her individual capacity, the Complaint does not allege any acts or omissions on her part. In addition, Alexander avers, without contradiction, that at the time of the incident in question, she was not the Warden of CDF and she had no supervisory authority over any correctional employee working at CDF or in the Central Transportation Unit. ECF 4-2.

### 3. Failure to Protect

Plaintiff claims that defendants failed to protect him and deliberately placed his life in

danger when they refused to buckle his seatbelt before transporting him to a different correctional facility. To establish a failure to protect claim, a prisoner must make two showings: first, that he suffered significant injury or was "'incarcerated under conditions posing a substantial risk of serious harm;'" and second, that the prison official at issue had a "'sufficiently culpable state of mind.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

Under the first prong, an objective inquiry, "a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions,'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)), "or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id. De'Lonta*, 330 F.3d at 634 (citing *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993)). Actual knowledge of a substantial risk does not alone impose liability. Where prison officials respond reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844.

The second showing is subjective and requires proof of deliberate indifference. *See Thompson v. Virginia*, 878 F.3d 89, 107 (4th Cir. 2017) (holding that deliberate indifference is the correct standard to apply where an officer refused to buckle the prisoner's seat belt, ignored his pleas for help, and failed to intervene to stop the other officer's dangerous driving). Ultimately, "'the test is whether the [prison officials] know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'" *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). To survive summary judgment, plaintiff must show facts sufficient for a reasonable factfinder to conclude that (1) he was exposed to a substantial risk of serious harm and (2) the

defendants knew of and disregarded that risk. *Thompson*, 878 F.3d at 107 (citing *Farmer*, 511 U.S. at 834, 837-38) (internal quotations omitted).

The fact that no one buckled plaintiff's seatbelt, by itself, does not present a constitutional claim. *See Scott v. Becher*, 736 F. App'x 130, 134 (6th Cir. 2018) (noting that "failure-to-seatbelt cases 'involved mere negligence'" and did not rise to an Eighth Amendment violation) (citing *Thompson*, 878 F.3d at 105-06). This conduct, coupled with intentional or deliberate misconduct, such as intentional dangerous driving, might present a constitutional claim. *See id.* But, plaintiff does not allege any intentional misconduct on the part of Alexander or Hardaway.

Plaintiff asserts that the van reached a speed of 85 miles per hour during the transport. But, the accident was not caused by the speed at which the vehicle was traveling on the highway. As the Correctional Defendants note, the plaintiff does not accuse the driver of the van of intentionally causing the collision or intentionally causing the alleged injury to plaintiff. *See* ECF 1; ECF 4-1 at 8. Rather, according to plaintiff's own account of the incident, a car that was merging onto the highway hit the transport van and caused the accident.

Even assuming that plaintiff satisfies the objective component of his claim, he has not alleged facts sufficient to establish the subjective component—that Alexander or Hardaway acted with a culpable state of mind. Based on this record, plaintiff fails to show that they were deliberately indifferent to his health or safety. Therefore, he cannot prevail on this claim.

Moreover, Alexander and Hardaway, both of whom are "state personnel," enjoy statutory immunity for actions predicated on any "tortious act or omission that is within the scope of [their] public duties and is "made without malice or gross negligence." *See* Maryland Tort Claims Act, Md. Code (2014 Repl. Vol.), State Gov't ("SG") §§ 12-101–12-110; Md. Code (2013 Repl. Vol.), Cts. & Jud. Proc. § 5-522(b).

Summary judgment in favor of Alexander and Hardaway is appropriate.

**B.  U.S. Marshals**

### *1.  FTCA*

Under the Federal Tort Claims Act, the United States is liable, as a private person, for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment."  28 U.S.C. § 1346(b).  Because the FTCA effects a waiver of sovereign immunity, the FTCA is to be narrowly construed and may not be extended by implication.  *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992).  Moreover, because the sovereign's consent to waiver of its immunity is to be narrowly construed, actions brought under the FTCA must be filed in compliance with the statutory terms.

The United States and its agencies may not be sued in tort except as permitted by the FTCA.  *See* 28 U.S.C. § 2679(b)(1); *see, e.g.*, *Salazar v. Ballesteros*, 17 F. Appx. 129, 130 (4th Cir. 2001) (explaining that the FTCA "immunizes federal employees who are sued for actions within the scope of [their] office or employment," and "allows the United States to be sued for certain torts committed by its employees").  As to claims that are "cognizable" under the FTCA, the FTCA is the "exclusive" remedy against the United States. *Id.* § 2679(a).

The FTCA's limited waiver of sovereign immunity for damages caused by government tortfeasors is subject to the condition that an administrative claim must first be submitted to the appropriate agency before suit can be filed. *See* 28 U.S.C. § 2675(a). Further, the FTCA provides that a tort claim against the United States "shall be forever barred" unless (1) the claim is presented to the "appropriate Federal agency within two years after such claim accrues," and (2) the claim is brought to federal court "within six months" after the agency has finally denied the claim or has

failed to make a final determination after the passage of six months. 28 U.S.C. § 2675(a) (requiring FTCA claimant to present the claim to the appropriate federal agency by certified or registered mail and denied in writing before a claim may be instituted against the United States); *see also* 28 U.S.C. § 2401(b).

Thus, there are two requirements within § 2401(b): the claim must be presented to the "appropriate Federal agency" and plaintiff must satisfy the time frame in which that presentment must take place. That the claim must be presented to the appropriate agency is "jurisdictional and may not be waived." *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986); *accord Kokotis v. United States Postal Serv.*, 223 F. 3d 275, 278 (4th Cir. 2000); *see Drew v. United States*, 217 F.3d 193, 196 (4th Cir. 2000) ("Where . . . a claim is not first presented to the appropriate agency, the district court must, pursuant to Fed. R. Civ. P. 12(b)(1), dismiss the action for want of subject matter jurisdiction.").

In contrast, the limitations period is not jurisdictional. *See Raplee v. United States*, 842 F.3d 328, 335 (4th Cir. 2016) (noting that "the FTCA's limitations period is not a jurisdictional rule but a claims-processing one.") (citing *United States v. Kwai Fun Wong*, ___ U.S. ___, 135 S. Ct. 1625, 1638 (2015)); *cf. Fort Bend County, Texas v. Davis*, ___ U.S. ___139 S. Ct. 1843, 1852 (2019) (concluding that a claims processing rule under Title VII is not jurisdictional).

"Subject matter jurisdiction cannot be forfeited or waived, and can be raised by a party, or by the court sua sponte, at any time prior to final judgment." *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010). Compliance with the FTCA's notice requirement is a "key jurisdictional prerequisite to filing suit under the FTCA," and it "'may not be waived.'" *Kokotis*, 223 F.3d at 278 (quoting *Henderson*, 785 F.2d at 123); *see also Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994).

In plaintiff's response to defendants' motions, plaintiff argues that he exhausted his administrative remedies when he filed an Informal Resolution with the Warden at FCI Ray Brook and subsequently appealed from each denial of his claim. ECF 14. But, the FTCA requires a different avenue of exhaustion, unrelated to the prison grievance procedure. Failure to follow the proper procedure deprives this court of jurisdiction over such a claim. *See Kielwien v. United States*, 540 F.2d 676, 679 (4th Cir. 1976).

Here, plaintiff does not assert that he submitted an administrative tort claim to the U.S. Marshals. Nor did a search by the Office of the General Counsel for the U.S. Marshals reveal any FTCA claim presented by plaintiff to that agency. *See* Decl. of Gerald Auerbach, ECF 10-2. Plaintiff's pursuit of prison administrative remedies with the General Counsel at the BOP does not suffice. As the exhaustion requirement for an FTCA claim against the U.S. Marshals has not been satisfied, plaintiff's claim shall be dismissed, without prejudice.

### 2. *Bivens Claim*

In a *Bivens* action, the plaintiff may seek money damages against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. But, the plaintiff may not seek damages against the United States or a federal agency. *Bivens*, 403 U.S. at 395-97; *see FDIC v. Meyer*, 510 U.S. 471, 484 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."); *see also Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002)).

The U.S. Marshals correctly state that "[a] *Bivens* action is a judicially-created monetary remedy designed to vindicate violations of constitutional rights by federal actors in their individual capacity." ECF 10-1 at 7 (citing *Hower v. Stewart*, GLR-17-198, 2018 WL 4384150, at *7 (D. Md. Sept. 14, 2018) (citing *Bivens*, 403 U.S. at 395-97 (1971))). To state a *Bivens* claim, a plaintiff

must allege that "a federal agent acting under color of his [federal] authority" violated his constitutional rights. *Bivens*, 403 U.S. at 389. Thus, plaintiff "must sue the marshals in their individual, and not official, capacities." *Funches v. Wright*, 804 F.2d 677 (4th Cir. 1986) (citing *Butz v. Economou*, 438 U.S. 478 (1978)). But, plaintiff has not named any individual Deputy Marshal as a defendant. Rather, he sued the agency. Nor has he stated a claim of violation of his constitutional rights by the USMS.

Plaintiff's *Bivens* claim against the U.S. Marshals shall be dismissed.

## IV.     Conclusion

Suit against the U.S. Marshals shall be dismissed, without prejudice, for failure to comply with the FTCA exhaustion requirement. No genuine issue as to any material fact is presented with regard to the claims against the Correctional Defendants, entitling them to judgment as a matter of law.

A separate Order follows.

January 15, 2020                                    _____/s/_____
Date                                                Ellen L. Hollander
                                                    United States District Judge